# In the United States Court of Federal Claims

No. 14-308C

(Filed: July 31, 2014)

**************************************

|  |  |  |
|---|---|---|
| **TERESA NAN LUCREE,** | ) | Challenge to Congress's authority to |
|  | ) | impose patent maintenance fees under the |
|  | ) | Intellectual Property Clause of the |
| **Plaintiff,** | ) | Constitution, art. I, § 8, cl. 8; claim akin to |
|  | ) | illegal exaction; takings claim |
| **v.** | ) |  |
|  | ) |  |
| **UNITED STATES,** | ) |  |
|  | ) |  |
| **Defendant.** | ) |  |
|  | ) |  |

**************************************

Frank A. Lukasik, The Villages, Florida, for plaintiff.

Sonia M. Orfield, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Stuart F. Delery, Assistant Attorney General, Civil Division, Robert E. Kirschman, Jr., Director, and Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. Of counsel were Heidi Bourgeois, Office of General Law, and William LaMarca, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, Virginia.

## OPINION AND ORDER

LETTOW, Judge.

Plaintiff Teresa Nan Lucree seeks to recover damages from the United States for the early expiration of her patent in 2010, which resulted from her failure to pay statutorily-mandated maintenance fees.[1] In her complaint, Ms. Lucree challenges Congress's authority to impose

---

[1]The complaint, filed April 16, 2014, lists nine additional individuals as "party or amicus" in this case, each of whom supposedly had patents that also expired as a result of unpaid maintenance fees. Joinder of these individuals would be improper under the terms of Rule 20(a) of the Rules of the Court of Federal Claims ("RCFC"). Although "[m]isjoinder of parties is not a ground for dismissing an action," RCFC 21, these other persons would not have a claim cognizable in this court. Each of the other individuals' patents expired between 1998 and 2006, putting their claims outside the six-year statute of limitations for actions commenced against the

maintenance fees and argues that the practice results in an illegal exaction and a taking of private property without compensation in contravention of the Fifth Amendment to the United States Constitution.  Pending before the court is the government's motion to dismiss Ms. Lucree's complaint pursuant to RCFC 12(b)(6).  For the reasons stated, the government's motion is GRANTED.

**BACKGROUND**

In the course of applying for and securing a patent, applicants must pay several fees, including filing fees, issue fees, and maintenance fees.  *See* 35 U.S.C. § 41.[2]  Of relevance here, patent holders must pay maintenance fees to the United States Patent and Trademark Office ("USPTO") three times during the lives of their issued patents to keep them in force.  *Id.* § 41(b)(1) ("The [USPTO] Director shall charge . . . fees for maintaining in force all patents . . . [at] [t]hree years and 6 months after grant, . . . [at] [s]even years and 6 months after grant, . . . [and at] [e]leven years and 6 months after grant.").  If a patent holder fails to pay maintenance fees within six months of the statutory deadlines, their pertinent patent expires.  *Id.* § 41(b)(2).[3]

Ms. Lucree paid the first and second required maintenance fees for her patent, U.S. Patent No. 5,791,732 (filed May 19, 1997) (issued Aug. 11, 1998), but failed to pay the third and final fee, resulting in the patent's expiration on August 11, 2010, after a six-month grace period, eight years earlier than anticipated.  *See* Compl. at 3-4; 1358 Off. Gaz. Pat. & Trademark Office No. 4 (Sept. 28, 2010).  Ms. Lucree made no attempt to dispute her nonpayment or to seek a revival of her patent.  *See* Def.'s Mot. at 4.  Rather, she filed suit in this court, challenging the constitutionality of maintenance fees and Congress's ability to attach conditions to patents that have been issued.  Compl. at 12, 16.  She contends that such conditions violate the property interests of patent holders in their patents by enabling the government to take their patents before their expiration date and place them in the public domain.  *Id.* at 16.

The government seeks dismissal of Ms. Lucree's complaint on the ground that Congress's well-settled authority to legislate patent fee requirements renders post-issuance conditions, such as maintenance fees, constitutional.  Def.'s Mot. at 5-7.  In the government's view, because conditions are permissible, there is no taking when patents expire due to unpaid maintenance fees.  *Id.* at 7-8 ("Ms. Lucree had no property to be taken once the patent lapsed due to nonpayment of the maintenance fees.").  Ms. Lucree accepts Congress's general authority to impose conditions on patents but contends that Congress exceeded its authority by requiring

---

United States.  28 U.S.C. § 2501.  Consequently, the claims of the other nine individuals are dismissed, and the court will treat Ms. Lucree as the sole plaintiff.

[2]Filing fees are prescribed in 35 U.S.C. § 41(a).  Other provisions of Section 41 specify examination fees, issue fees, appeal fees, revival fees, and maintenance fees, among others.  *See Id.* § 41(a)(3), (4), (6), (7) and (b).  Fees are reduced for small businesses.  *See id.* § 41(h).

[3]"The Director may accept the payment of any maintenance fee required by subsection (b) after the 6-month grace period if the delay is shown to the satisfaction of the Director to have been unintentional."  35 U.S.C. § 41(c)(1).  In such cases, patents are "revived" and a revival fee is due.  *Id.* § 41(a)(7); *see also* Def.'s Mot. to Dismiss ("Def.'s Mot.") at 4, ECF No. 5.

maintenance fees.  *See* Reply Brief of Teresa Nan Lucree ("Pl.'s Opp'n") at 5, 10, ECF No. 6.
Maintenance fee requirements, she contends, improperly adopt a European approach to patent
law that allows the government to take the personal property of patent-holders who fail to pay
additional fees on property that they own.  *Id.* at 8-10, 12.

## JURISDICTION

This court has jurisdiction over Ms. Lucree's claims pursuant to the Tucker Act, 28
U.S.C. § 1491(a)(1), which grants the Court of Federal Claims "jurisdiction to render judgment
upon any claim against the United States founded either upon the Constitution, or any Act of
Congress or any regulation of an executive department, or upon any express or implied contract
with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."
28 U.S.C. § 1491(a)(1).  Nonetheless, the Tucker Act does not create a substantive right to
monetary relief.  *United States v. Testan*, 424 U.S. 392, 398 (1976).  Rather, a plaintiff must
point to an additional source of law that mandates compensation by the federal government for
any damages sustained.  *United States v. Mitchell*, 463 U.S. 206, 216-17 (1983) (citing *Testan*,
424 U.S. at 400).  Here, Ms. Lucree seeks relief for the early expiration of her patent under the
Fifth Amendment's takings clause, which prohibits "private property [from] be[ing] taken for
public use, without just compensation."  U.S. Const. amend. V.  A claim for just compensation is
a claim for money damages cognizable under the Tucker Act.  *Preseault v. Interstate Commerce
Comm'n*, 494 U.S. 1, 11-13 (1990); *Narramore v. United States*, 960 F.2d 1048, 1051 (Fed. Cir.
1992).  Ms. Lucree's challenge to the constitutionality of the maintenance-fee provisions of 35
U.S.C. § 41 also implicitly raises a claim of an illegal exaction, *i.e.*, to recover money improperly
paid, exacted, or taken from her in contravention of the Constitution when she paid the first two
maintenance fees that were due under 35 U.S.C. § 41(b).  A claim based upon an illegal exaction
pursuant to an asserted statutory power may be maintained under the Tucker Act.  *Aerolineas
Argentinas v. United States*, 77 F.3d 1564, 1572-73 (Fed. Cir. 1996); *Eastport S. S. Corp. v.
United States*, 372 F.2d 1002, 1007-08 (Ct. Cl. 1967); *see also Figueroa v. United States*, 466
F.3d 1023, 1029 (Fed. Cir. 2006) (ruling that a patent holder had standing to challenge the
legality of patent fees that he had paid).

## STANDARD FOR DECISION

To avoid dismissal under RCFC 12(b)(6), a complaint must contain sufficient factual
matter, accepted as true, that states a plausible claim for relief.  *See Connolly-Lohr v. United
States*, 112 Fed. Cl. 350, 352 (2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  When
considering a motion to dismiss under RCFC 12(b)(6), courts must accept all well-pleaded
factual allegations as true and draw all reasonable inferences in the pleader's favor.  *Perez v.
United States*, 156 F.3d 1366, 1370 (Fed. Cir. 1998).  If the facts alleged in the complaint do not
entitle the plaintiff to a legal remedy, the complaint may be dismissed for failure to state a claim
upon which relief can be granted.  *Southfork Sys., Inc. v. United States*, 141 F.3d 1124, 1131
(Fed. Cir. 1998); *Connolly-Lohr*, 112 Fed. Cl. at 352 (citing RCFC 12(b)(6)).

## ANALYSIS

### A. Constitutionality of Maintenance Fees

The Constitution grants Congress the power "to promote the progress of science and useful arts by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." U.S. Const. art I, § 8, cl. 8. Ms. Lucree concedes that the Intellectual Property Clause authorizes Congress to impose conditions on patent applications, but she contends that it does not empower Congress to place conditions on patents after they have been issued. Compl. at 12. She argues that post-issuance conditions like maintenance fees are unconstitutional because they are derived from European patent laws rather than the Constitution,[4] and because they detract, rather than promote, scientific progress by burdening patent applicants with added costs and the threat of early expiration for nonpayment. *See* Compl. at 9-16; *see also* Pl.'s Opp'n at 6-8.[5]

The government avouches that "'maintenance fees and the patent system put in place by Congress . . . do not conflict with the Constitution.'" Def.'s Mot. at 6 (quoting *Korsinsky v. Dudas*, 227 Fed. Appx. 891, 894 (Fed. Cir. 2007)). Rather, the Constitution grants Congress discretion to determine which patent policies and practices will best promote scientific progress. *Id*. at 5 ("'[T]he powers of Congress to legislate on the subject of patents is plenary by the terms of the Constitution.'") (quoting *McClurg v. Kingsland*, 42 U.S. (1 How.) 202, 206 (1843)). The right to a patent, the government contends, is statutory, and Congress is constitutionally authorized to impose monetary conditions on it. *Id*. at 5-6 (citing *Graham v. John Deere Co.*, 383 U.S. 1, 6 (1966); *Boyden v. Commissioner of Patents*, 441 F.2d 1041, 1043-44 (D.C. Cir. 1971); and *Giuliani v. United States*, No. 88-00287 ACK, 1988 WL 97455, at *1 (D. Haw. Aug. 1, 1988), *aff'd*, 878 F.2d 1444 (Fed. Cir. 1989)).

---

[4]Ms. Lucree contends that Congress adopted the Paris Convention, not the United States Constitution, as its guide for patent legislation, Pl.'s Opp'n at 5, and based its authority to prescribe maintenance fees on the "European Method," *id.* at 9.

[5]Ms. Lucree also posits two additional arguments for the unconstitutionality of maintenance fees. First, she argues that maintenance fees impermissibly impose additional requirements on patentees, *i.e.*, entrepreneurship and commercial success. Pl.'s Opp'n at 7-8. However, as the government notes, all patentees are required to pay maintenance fees, regardless of the commercial value of their patents. Def.'s Mot. at 7 n.5. It is up to the patent-holder to decide whether the patent is worth maintaining. *Id*. Thus, while maintenance fees force patent-holders to make a choice, they do not bind them to any additional requirements apart from payment of the specified fee, rendering Ms. Lucree's argument unpersuasive.

Second, she argues that maintenance fees are unconstitutional because the fees are used to pay the expenses of future applications by the Patent Office, which Ms. Lucree alleges is on a self-sustaining budget. Compl. at 17. This argument also is without merit. "Congress'[s] determination of federal spending priorities and how the patent system fits into national economic development goals is an eminently rational exercise of its power." *Figueroa v. United States*, 66 Fed. Cl. 139, 152 (2005), *aff'd*, 466 F.3d 1023.

Given the broad terms of the Intellectual Property Clause of the Constitution, any condition Congress imposes on patents need only be rationally related to the promotion of progress in science and the useful arts to survive judicial scrutiny. *Figueroa*, 66 Fed. Cl. at 152. While Ms. Lucree contends that Congress's imposition of maintenance fees gives greater prominence to European practice than the terms of the Constitution, and imposes a post-issuance condition on a patent, nothing in the Constitution forecloses Congress from requiring such fees, which rationally relate to the promotion of scientific progress.[6]

### B. Takings

In addition to challenging the constitutionality of maintenance fees, Ms. Lucree contends that Congress's imposition of such fees resulted in an unconstitutional taking of her private property, for which she now seeks just compensation. Compl. at 16.[7] She alleges that she had complied with all of the requirements for patent issuance, giving her a cognizable property right in her patent, independent of any additional post-issuance congressional conditions. Compl. at 17-18. She accordingly avers that she should be compensated for all lost profits incurred by the early expiration of her patent. *Id.* at 21. The government maintains that there is no taking because the patent privilege does not exist independent of congressional conditions, including post-issuance maintenance fees, meaning that Ms. Lucree had no property to be taken by the government after she failed to pay the third installment of those fees. Def.'s Mot. at 7-8.

It is undisputed that Ms. Lucree had a property interest in her patent. That property interest, however, was subject to the terms and conditions set by Congress, including maintenance fees.[8] Because Ms. Lucree did not pay the final maintenance fee due on her patent,

---

[6]Congress explained its adoption of maintenance fees as "ha[ving] the advantage of deferring payment until the invention begins to return revenue to the inventor. Should the invention prove to have no commercial value, the inventor has the option of permitting the patent to lapse, thus avoiding further fees." H.R. Rep. No. 96-1307(I), at 4-5 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6460, 6463-64; *see* Def.'s Mot. at 7 n.5.

[7]Ordinarily, claimants must concede the validity of the government action underlying their takings claims. *See Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802 (Fed. Cir. 1993). Nonetheless, "[a] claim in our court for just compensation due to a taking is not defeated merely because a property owner believes that the government action that allegedly took his property was for other reasons invalid – or even because he goes so far as to challenge its validity. As the Federal Circuit has explained, 'a court's conclusion that government agents acted unlawfully does not defeat a Tucker Act takings claim if the elements of a taking are otherwise satisfied.'" *Bailey v. United States*, 78 Fed. Cl. 239, 253-54 (2007) (quoting *Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358, 1363 (Fed. Cir. 1998)). Accordingly, Ms. Lucree's takings claim is not precluded by her constitutional challenge.

[8]As the government notes, a similar complaint filed in 2006 was dismissed under Rule 12(b)(6) for failure to state a claim. *See Michels v. United States*, 72 Fed. Cl. 426 (2006). In *Michels*, the court held that Congress had the authority to impose conditions, including maintenance fees, on patents, and that an early expiration of patents due to nonpayment did not

the early expiration of her patent did not constitute a taking by the government, but rather was consequence for her failure to fulfill the requirements upon which her patent was conditioned. These circumstances do not entitle Ms. Lucree to legal relief, and her complaint may be properly dismissed for failure to state a claim.[9]

## CONCLUSION

For the reasons set forth above, the government's motion to dismiss Ms. Lucree's complaint pursuant to RCFC 12(b)(6) is GRANTED.

The clerk shall enter judgment in accord with this disposition.

No costs.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Judge

---

constitute a taking of property for purposes of the Fifth Amendment.  *Id*. at 430 (citing *Figueroa v. United States*, 57 Fed. Cl. 488 (2003)).  The court refrained, however, from ruling on the constitutionality of maintenance fees given that it was raised for the first time in the plaintiff's response to the government's motion to dismiss.  *Id*. at 431-432.  The court in *Michels* nonetheless stated that had the issue been properly pled, it would have failed on the merits.  *Id*. at 432.

[9]Ms. Lucree's complaint also challenges the constitutionality of publishing patent applications eighteen months after filing and the Patent Office's transition to the "first to file" system, both of which she contends harm small businesses and independent inventors.  Compl. at 18-21.  This challenge is hypothetical; Ms. Lucree acknowledges that the "first to file" system is not pertinent to her claims in this action.  Compl. 20-21.  Consequently, Ms. Lucree fails to establish that she has standing to bring these claims.  *See, e.g.*, *Madstad Eng'g, Inc. v. United States Patent & Trademark Office*, __ F.3d __, __, 2014 WL 2938080, at *1, *13 (Fed. Cir. July 1, 2014) (holding that a plaintiff did not have standing to challenge the "first to file" system where its alleged harms were speculative and not actual). Nonetheless, even if standing were found, these claims would fail on the merits, given the court's deference to congressional discretion over patent legislation.